**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| JESSICA COMBS, an individual, | No. 25-3164 |
| *Plaintiff - Appellant*, | D.C. No. 2:24-cv-09037-MRA-MAA |
| v. | |
| NETFLIX, INC., a Delaware Corporation Registered with the California Secretary of State, | OPINION |
| *Defendant - Appellee*. | |

Appeal from the United States District Court
for the Central District of California
Monica Ramirez Almadani, District Judge, Presiding

Argued and Submitted February 4, 2026
Pasadena, California

Filed July 8, 2026

Before: Susan P. Graber, Daniel A. Bress, and Anthony D. Johnstone, Circuit Judges.

Opinion by Judge Bress

2         COMBS V. NETFLIX, INC.

# SUMMARY[*]

## Arbitration / EFAA

The panel affirmed the district court's order granting Netflix, Inc.'s motion to compel arbitration in Jessica Combs's diversity action alleging employment-related claims.

Combs alleged that between 2017 and 2021 she repeatedly complained to supervisors and management about Netflix's sexually charged environment and specific instances of harassment, that Netflix ignored her complaints, and that she was fired in retaliation for submitting complaints.

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA) limits the Federal Arbitration Act's reach as to claims involving sexual harassment or sexual assault, allowing plaintiffs making such allegations to proceed in court notwithstanding any predispute agreement to arbitrate. Included in the EFAA is a timing provision in a statutory note, which reads: "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act," *i.e.*, March 3, 2022. 9 U.S.C. § 401 note.

The panel held that Combs's complaint alleged conduct constituting unlawful sexual harassment. Her claims therefore presumptively fell within the EFAA, and she could

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

elect to proceed in court rather than through arbitration, if she met the EFAA's timing provision.

Interpreting the EFAA's timing provision as a matter of first impression, the panel held that the EFAA would apply either to "claims that accrue" or "disputes that arise" on or after March 3, 2022. The panel determined that a claim accrues under the EFAA when the plaintiff has a complete and present cause of action and that a dispute arises for purposes of the EFAA when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position.

The panel held that by the allegations of Combs's complaint, the dispute arose and claims accrued before the EFAA's effective date of March 3, 2022. Because the EFAA does not apply, Combs's claims must proceed to arbitration.

## COUNSEL

Michael C. P. Clark (argued), Brown Clark Le & Cevallos LLP, Rancho Santa Margarita, California; Edwin B. Brown, Brown & Stedman LLP, Rancho Santa Margarita, California; for Plaintiff-Appellant.

Ashley F. Pickett (argued), Karin Bohmholdt, Bryan W. Patton, and Jonathan A. Schaub, Greenberg Traurig LLP, Los Angeles, California, for Defendant-Appellee.

4                    COMBS V. NETFLIX, INC.

## OPINION

BRESS, Circuit Judge:

On March 3, 2022, Congress enacted the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA), which allows plaintiffs alleging sexual assault or sexual harassment to proceed in court, notwithstanding any arbitration agreement between the parties. Pub. L. No. 117-90, § 2(a), 136 Stat. 26, 26–27 (2022); 9 U.S.C. § 402(a). Congress specified, however, that the EFAA "shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act," *i.e.*, March 3, 2022. § 3, 136 Stat. at 28; 9 U.S.C. § 401 note. The interpretation of the EFAA's timing provision is an issue of first impression in this circuit. We hold that by the allegations of the plaintiff's complaint, the dispute arose and claims accrued before the EFAA's effective date of March 3, 2022. Because the EFAA does not apply, we affirm the district court's order compelling arbitration.

I

In May 2017, Jessica Combs accepted a job at Netflix. Her employment agreement contained an arbitration clause that covered all employment-related disputes. Soon after starting at Netflix, and continuing for a period of years, Combs alleges she was subjected to a sexualized employment environment and sexual harassment, which Netflix refused to do anything about. She also alleges that Netflix eventually fired her in response to her repeated complaints. The following are representative allegations from Combs's complaint.

In June 2017, not long after she started at Netflix, Combs discovered that "Netflix promoted quite a flirtatious office environment that was very sexual in nature," which "foster[ed] unwanted sexually charged comments" and a culture of "sexual curiosity." According to the complaint, Netflix endorsed interactions between coworkers that were inappropriate in nature. For example, employees were encouraged to schedule one-on-one meetings to get to know each other, but these meetings had sexual undertones, with male employees using them to ask Combs out on dates and to flirt with her.

In September 2018, Combs attended a company offsite meeting, where she was required to participate in team-building activities that she regarded as sexualized in nature. This included being required to stare into the eyes of colleagues and complimenting their physical appearances, which Combs viewed as "forced speed dating games." Combs complained to her manager about the offsite activities, but "Netflix failed to take appropriate corrective action." Nor did Netflix take corrective action after Combs complained about a stairwell that male employees used to look under female employees' dresses. During a work trip to Singapore in October 2018, a male colleague made unwanted sexual advances toward Combs.

Combs alleges that, between 2017 and 2021, she repeatedly complained to Netflix about instances of sexual harassment and Netflix's sexually degrading culture. Combs brought these issues to the attention of her supervisors, "only to be ignored and discarded." Elsewhere in her complaint, Combs asserts that she "complained to [Netflix] regarding the uncomfortable nature of the sexually charged atmosphere she and other female employees were subjected to," but "no action was taken to remedy the

situation and the harassment continued." According to Combs, "despite her voicing concerns to management, [Netflix] did not take any reasonable steps to prevent harassment from occurring."

After she brought these matters to the attention of her supervisors, Combs alleges that from 2017 to 2021, she "experienced retaliation, humiliation, and targeted harassment." According to Combs's complaint, "after [she] informed [Netflix] of the uncomfortable and demeaning circumstances she was enduring," she "was sexually harassed and subjected to a hostile work environment on a daily basis as a result of [Netflix's] actions or inactions." Things came to a head in December 2021, when Netflix fired Combs. Although Netflix informed Combs that it was terminating her because she failed to comply with the company's COVID-19 vaccination policy, Combs alleges that the real reason she was fired was "in retaliation for submitting complaints regarding the sexually charged atmosphere in the workplace."

In August 2023, Combs filed an administrative complaint against Netflix with the California Department of Fair Employment and Housing. She received an immediate right-to-sue letter on August 3, 2023. On July 29, 2024, Combs sued Netflix in California state court, raising various state law claims of discrimination, harassment, and hostile work environment.

Netflix removed the case to federal court based on diversity of citizenship and moved to compel arbitration. The district court granted Netflix's motion, concluding that Combs's claims accrued and the dispute arose before the EFAA's March 3, 2022 effective date. Because the EFAA did not override the parties' arbitration agreement, and

because Combs did not dispute the validity of that agreement or that her claims fell within the arbitration clause, the suit was required to go to arbitration.

Combs appeals. We review a district court's order granting a motion to compel arbitration de novo. *Holley-Gallegly v. TA Operating*, *LLC*, 74 F.4th 997, 1000 (9th Cir. 2023).

## II

The Federal Arbitration Act (FAA) provides that arbitration agreements are generally enforceable. 9 U.S.C. § 2. But the EFAA limits the FAA's reach as to claims involving sexual harassment or sexual assault, allowing plaintiffs making such allegations to proceed in court notwithstanding any predispute agreement to arbitrate. *See id.* §§ 401–402. The central provision of the EFAA provides that:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, or the named representative of a class or in a collective action alleging such conduct, no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

*Id.* § 402(a). The statute defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to

constitute sexual harassment under applicable Federal, Tribal, or State law." *Id.* § 401(4).

To determine whether the EFAA covers a plaintiff's claims, we first consider whether the allegations in the complaint sound in sexual harassment or sexual assault. Here, there is no question that the complaint alleges conduct constituting unlawful sexual harassment. Combs's claims therefore presumptively fall within the EFAA, and, absent anything further, she could elect to proceed in court rather than through arbitration.

But Congress in the EFAA also included a timing provision in a statutory note, which reads: "This Act, and the amendments made by this Act, shall apply with respect to any dispute or claim that arises or accrues on or after the date of enactment of this Act," *i.e.*, March 3, 2022. *Id.* § 401 note. Although not part of the U.S. Code, this statutory note is congressionally enacted and is binding law. *See Cornelius v. CVS Pharmacy Inc.*, 133 F.4th 240, 246 n.8 (3d Cir. 2025); *see also, e.g.*, *Shoshone-Bannock Tribes of Fort Hall Rsrv. v. U.S. Dep't of the Interior*, 153 F.4th 748, 759 n.9 (9th Cir. 2025). The key question presented in this appeal is how to interpret and apply this timing provision. In resolving this question, we interpret the statutory text based on its plain language, as considered in context. *See, e.g.*, *United States v. Schena*, 142 F.4th 1217, 1221–22 (9th Cir. 2025).

A

Because of the parallelism in the phrases "dispute or claim" and "arises or accrues," it is most natural to read the EFAA's statutory note as referring to two separate concepts: "disputes that arise" and "claims that accrue." As the Sixth Circuit explained when interpreting this same provision, "[i]n legal parlance, the term 'claim' is commonly associated

with the concept of 'accrual,'" whereas disputes are not typically said to "accrue," but to "arise." *Memmer v. United Wholesale Mortg., LLC*, 135 F.4th 398, 407 (6th Cir. 2025). We agree with that common-sense linguistic insight, which is consistent with other parts of the EFAA. *See* 9 U.S.C. § 401(1) (referring to a "*dispute* that had not yet *arisen* at the time of the making of the agreement" (emphasis added)); *id.* § 401(2) (similar). And because Congress used the disjunctive "or" to describe "any dispute or claim that arises or accrues," we further agree with the Sixth Circuit that Congress "meant to differentiate" two distinct concepts, such that the EFAA would apply either to "claims that accrue" or "disputes that arise" on or after March 3, 2022. *Memmer*, 135 F.4th at 407 (quoting 9 U.S.C. § 401 note).

Starting with the simpler interpretive task, we first determine when a "claim accrues" under the EFAA. Claim accrual is a legal term of art with a well-established meaning. *Id.* at 407–08; *see also Olivieri v. Stifel, Nicolaus & Co.*, 112 F.4th 74, 87 (2d Cir. 2024) (explaining that when a claim accrues "is informed by common law principles"). A claim accrues "when the plaintiff has a 'complete and present cause of action'—*i.e.*, when she has the right to 'file suit and obtain relief.'" *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 809 (2024) (quoting *Green v. Brennan*, 578 U.S. 547, 554 (2016)). We can fairly presume that Congress borrowed this settled understanding of claim accrual in the EFAA. *See, e.g.*, *FAA v. Cooper*, 566 U.S. 284, 291–92 (2012) (explaining the "cardinal rule of statutory construction" that "when Congress employs a term of art, 'it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken'" (quoting *Molzof v. United States*, 502 U.S. 301, 307 (1992))). Applying this settled

framework, Combs had a complete and present cause of action before the EFAA's March 3, 2022 effective date, given that she alleges harassment and a subsequent termination that took place between 2017 and 2021.

The more difficult question is what it means for a "dispute" to "arise." Combs argues that no dispute arose in this case until August 2023, when she filed her formal complaint against Netflix with the California Department of Fair Employment and Housing. But our sister courts that have considered this question have not embraced Combs's more limited reading of the statutory text. *See Memmer*, 135 F.4th at 410; *Cornelius*, 133 F.4th at 247–48; *Famuyide v. Chipotle Mexican Grill, Inc.*, 111 F.4th 895, 898 (8th Cir. 2024); *see also Kader v. S. Cal. Med. Ctr., Inc.*, 317 Cal. Rptr. 3d 682, 688–89 (Cal. Ct. App. 2024). Instead, they have adopted the interpretation exemplified in the Third Circuit's *Cornelius* decision: that a dispute arises for purposes of the EFAA "when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position." 133 F.4th at 247.

We agree with this formulation. As ordinarily understood, a "dispute" requires "some aspect of opposition or disagreement" between the parties as to a particular issue. *Cornelius*, 133 F.4th at 246; *see Dispute*, Black's Law Dictionary (11th ed. 2019) (defining "dispute" as a "conflict or controversy, esp. one that has given rise to a particular lawsuit"). This is how other courts have construed "dispute" in the context of the EFAA. *See Cornelius*, 133 F.4th at 246, 248; *Memmer*, 135 F.4th at 409 ("The relevant question is when the parties became adverse to one another."); *Famuyide*, 111 F.4th at 898 (explaining that a dispute arises

under the EFAA when there is "conflict or controversy between company and employee," *i.e.*, "registered disagreement"); *Kader*, 317 Cal. Rptr. 3d at 688 ("A dispute arises when one party asserts a right, claim, or demand, and the other side expresses disagreement or takes an adversarial posture.").

When a dispute arises for EFAA purposes will be a fact-specific inquiry in every case. *See Memmer*, 135 F.4th at 409. But we reject two more extreme interpretations of "dispute" that would raise or lower the bar for finding that a dispute has arisen. The first is Combs's position that a "dispute" does not arise until a formal complaint is filed with an external body, like a court or the California state agency with whom Combs filed her complaint in August 2023. Interpreting a "dispute" to require a formal external complaint "is too narrow and fails to capture the broader, ordinary meaning of the word 'dispute.'" *Memmer*, 135 F.4th at 410; *see also Cornelius*, 133 F.4th at 247–48 (explaining that a plain understanding of "dispute" "is not tethered to a particular process," because "[t]here is no compelling reason to limit the term 'dispute' to the filing of an 'external complaint alleging employer liability'"). Depending on the particular facts of a case, "a dispute may arise on the date that a lawsuit was filed," but given the broader nature of the term "dispute," "it may arise earlier, too." *Memmer*, 135 F.4th at 410.

By the same token, our understanding of "dispute" also excludes the more extreme position on the opposite end of the spectrum: that a dispute arises whenever the underlying challenged conduct occurred. Just as Combs's interpretation of "dispute" is too narrow, an interpretation that looks only to the underlying conduct is too broad, for it would mean that a "dispute" arises whenever a "claim" accrues. That

interpretation would render Congress's use of these independent concepts superfluous. *See Memmer*, 135 F.4th at 411–12; *see also Gage v. Chappell*, 793 F.3d 1159, 1168 (9th Cir. 2015) ("Familiar principles of statutory interpretation direct that we give independent meaning to each provision in a statute.").

Indeed, appellate courts that have considered this "occurrence-based" or "injury-based" interpretation of "dispute" have uniformly rejected it. *See Memmer*, 135 F.4th at 410 (rejecting position that a "dispute" "refer[s] to the allegedly harassing or assaultive conduct itself," because it "deprive[s] the word 'dispute' of its ordinary meaning"); *Cornelius*, 133 F.4th at 246 (explaining that a "dispute" does not equate with an injury because injury "lacks the essential quality of disagreement that the term 'dispute' signifies"); *Famuyide*, 111 F.4th at 898 (rejecting employer's argument that "a 'dispute' necessarily arises when the underlying conduct occurs"); *Kader*, 317 Cal. Rptr. 3d at 688 ("[A] dispute does not arise solely from the alleged sexual conduct."). We also conclude that a dispute does not arise under the EFAA whenever the underlying conduct occurs. Although that conduct is central in considering when the claim accrues, it does not determine when a dispute arises.

Instead, as we have explained, a "dispute" requires "some aspect of opposition or disagreement" between the parties. *Cornelius*, 133 F.4th at 246. And in the particular context of an employer-employee relationship, such a "dispute" arises "when an employee registers disagreement—through either an internal complaint, external complaint, or otherwise—with his or her employer, and the employer expressly or constructively opposes that position." *Id.* at 247. Although this formulation means that a "claim" will typically "accrue" before a "dispute" arises,

that may not always be the case depending on the rules of accrual for continuing violations, such as hostile work environment claims.  *See Memmer*, 135 F.4th at 409; *see also Green*, 578 U.S. at 562 (recognizing that the "limitations period for [a] hostile-work-environment claim runs from the last act composing the claim" (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–21 (2002))); *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1178 (10th Cir. 2011) (explaining that hostile work environment claims "accrue each time acts contributing to that environment occur").  Again, when claims accrue and disputes arise under the EFAA will turn on the facts presented in each case.

## B

Treating the allegations in Combs's complaint as true, we conclude that a dispute arose between Combs and Netflix prior to March 3, 2022, meaning that the EFAA does not apply to her claims.

By the allegations of the complaint, between 2017 and 2021, Combs repeatedly complained to supervisors and management about Netflix's sexually charged environment and specific instances of harassment.  According to Combs, Netflix consistently ignored her complaints; took "no action . . . to remedy the situation"; and undertook no "reasonable steps to prevent harassment from occurring."  Then, in December 2021, Netflix allegedly fired Combs in retaliation for submitting those complaints.

Considering these allegations as a whole, a "dispute" between Combs and Netflix easily arose by December 2021 at the latest.  When Combs repeatedly complained to Netflix about the sexualized company culture and the inappropriate actions of her co-workers, and when Netflix then allegedly

failed to take any corrective action, there was plainly "some aspect of opposition or disagreement" between the parties. *Cornelius*, 133 F.4th at 246. Netflix's alleged inaction shows that the company, at minimum, "constructively oppose[d]" Combs's position. *Id.* at 247–48. When an employee complains to her employer about the actions of co-employees, a dispute arises once the employer responds negatively, or constructively so, to the employee's complaints. And certainly, a dispute had arisen by December 2021, given that Netflix allegedly opposed Combs's complaints to such an extent that it fired her for raising those complaints. *See Memmer*, 135 F.4th at 409.

Our application of the test for when a dispute arises for purposes of the EFAA aligns with the most factually analogous case to this one—the Third Circuit's decision in *Cornelius*. In that case, a CVS employee was allegedly discriminated against because of her gender and sexually harassed by her supervisor, Patel, beginning in 2018. 133 F.4th at 243. She voiced her first concern with Patel's supervisor in April 2019. *Id.* Because CVS did not take corrective action, the plaintiff proceeded to submit "many complaints to CVS, at least six in writing, regarding Patel's conduct between September 2019 and June 2020." *Id.* According to the plaintiff, CVS always sided with Patel, dismissed her discrimination complaints, failed to remedy the harassing conduct, and fired her in 2021. *Id.* at 243–44. The plaintiff filed an administrative complaint in August 2022 and a complaint in federal court in April 2023. *Id.* at 244.

On these facts, the Third Circuit had "no trouble concluding" that the employee's dispute arose prior to March 3, 2022 and thus fell outside the EFAA because, according to the plaintiff's complaint, she submitted several

written, internal complaints that CVS allegedly dismissed and failed to remedy. *Id.* at 248. By the Third Circuit's estimation, this showed that "CVS disagreed with [plaintiff's] position as to Patel's conduct." *Id.* That reasoning is fully consistent with our reasoning in this case.

We recognize, as did the Third and Sixth Circuits, "that it may not always be easy to tell when an employee first registers disagreement with his or her employer or when an employer disagrees with a position of an employee." *Cornelius*, 133 F.4th at 248 n.9; *Memmer*, 135 F.4th at 411. If Combs had not made internal complaints to Netflix, the situation would be different. *See Kader*, 317 Cal. Rptr. 3d at 689–90. But considering the entirety of Combs's alleged interactions with Netflix, we have little difficulty concluding that their dispute arose before March 3, 2022. Combs's claims must therefore proceed to arbitration.

**AFFIRMED.**